**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Maria L.,

Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; Todd Lyons, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and Joel Brott, *in his official capacity as Sheriff of Sherburne County*,

Respondents.

Civ. No. 26-2515 (JWB/ECW)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Conor H.M. Smith, Esq., and Tyler Hawkins, Esq., Ballard Spahr LLP, counsel for Petitioner.

David W. Fuller, Esq., and Derek Ganzhorn, Esq., United States Attorney's Office, counsel for federal Respondents.

---

Petitioner Maria L. is a noncitizen who was arrested within the United States and detained by immigration authorities without any opportunity to seek release on bond. This case asks whether a noncitizen who previously entered the United States, lived, went to school, and worked in the community for more than six years, and was later detained as an applicant for admission may be held without any meaningful opportunity to obtain

an individualized determination regarding the justification for her continued detention.

The governing statute permits detention of noncitizens classified as applicants for admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

**BACKGROUND**

Petitioner is a citizen of El Salvador. (*See* Doc. No. 1, Petition ¶¶ 2, 51; Doc. No. 10-2, Robinson Decl., Ex. B at 1.) She entered the United States in July 2019, was briefly detained, and then released on an Order of Release on Recognizance. (Petition ¶¶ 51–52; Doc. No. 11, Petitioner Reply at 3; Doc. No. 11-1, Pet. Ex. A; Doc. No. 11-2, Pet. Ex. B.)

Petitioner attended middle and high school in the United States and has been living in Shakopee, Minnesota with a family of United States citizens. (Petition ¶¶ 12, 51, 54–55.) Petitioner has been employed at a book binding company, McDonald's, and other restaurants. (*Id.* ¶ 56.) Nothing in the record shows that she has a criminal record.

On April 10, 2026, Petitioner was brought into custody following an automobile collision and was detained at the Washington County Jail. (*Id.* ¶ 57; Doc. No. 10-3, Robinson Decl., Ex. C at 2.)

Petitioner was scheduled to be released on April 13, 2026, but was interviewed and detained by Immigration and Customs Enforcement ("ICE") agents. (Petition ¶ 57; Robinson Decl., Ex. C at 2.) That same day, the Department of Homeland Security

("DHS") served Petitioner with a Notice to Appear ("NTA"), which commenced removal proceedings and charged Petitioner with being present in the United States without admission or parole. (Doc. No. 10-2, Robinson Decl., Ex. B.) Petitioner has since remained in custody at the Sherburne County Jail in Elk River, Minnesota. (Petition ¶¶ 1, 12, 17, 58; Robinson Decl., Ex. B at 4.) On June 22, 2026, a hearing was held on Petitioner's removal, and an Immigration Judge ordered her removed. (Doc. No. 15.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of establishing, by a preponderance of the evidence, that her detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases). Petitioner argues that her detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 60–83.) She also claims that her detention violates the Immigration and Nationality Act, only to preserve the claim in light of the recent decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). (*Id.* ¶¶ 84–90.)

The Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition challenges only Petitioner's detention, and not her removability or any removal order, the statutory jurisdiction-

channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Removal Order and Notice of Appeal

Respondents contend that this action is now moot because Petitioner's removal order became administratively final when she waived her right to appeal at the June 22 hearing. (*See* Doc. No. 15.) Petitioner asserts that she did not knowingly and intelligently waive her right to appeal, and that on June 26, 2026, she filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"). (*See* Doc. No. 16.) In Respondents' supplemental brief, they do not contest that Petitioner can file the appeal, but they argue that the appeal does not change the fact that the June 22 removal order is administratively final and that Petitioner is therefore subject to 90-day mandatory detention under 8 U.S.C. § 1231(a)(2)(A). (*See* Doc. No. 18.)

Respondents cite a string of cases to support their position. (*Id.*) Not one case holds that a Petitioner is subject to mandatory detention while an appeal challenging the validity of a waiver is pending with an Immigration Judge or the BIA. Respondents' cited authority is therefore not persuasive.

Petitioner contends that because she has appealed the validity of her waiver to the BIA, under § 1231(a)(1)(B)(i)-(ii) the removal period has not begun, therefore she cannot be detained under § 1231. (*See* Doc. No. 19 at 2.) Petitioner's arguments are well-taken.

Petitioner's challenge to her purported waiver is appropriate to raise in a direct appeal to the BIA. *Matter of Patino*, 23 I. & N. Dec. 74, 76 (BIA 2001) (holding that a

party wishing to challenge a waiver of appeal may file an appeal directly with the BIA). Validity of a waiver of appeal is not settled until the BIA rules. *See Bah v. Gonzales*, 457 F.3d 838, 838 (8th Cir. 2006) (explaining that the case was not ripe for Eighth Circuit review and remanding to the BIA for a determination as to the appeal waiver validity); *Fuga v. Warden, Cal. City Det. Facility*, No. 2:26-cv-00654-JLT-SAB, 2026 WL 1396685 (E.D. Cal. May 19, 2026) (holding that a removal order is not administratively final until the BIA determines that a waiver is valid). Because the validity of Petitioner's appeal waiver remains pending before the BIA, the June 22, 2026 removal order is not yet administratively final, the removal period under § 1231(a)(1)(B) has not begun, and Petitioner is not presently subject to mandatory detention under § 1231.

**B. Statutory Detention Authority**

Respondents originally contended that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*See* Doc. No. 9.)

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for

§ 1225(b)(2)(A) purposes, regardless of whether they were encountered at the border or within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required as a matter of statutory construction).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, no matter how far from the border she was apprehended or how long she had been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised comports with the Constitution. Indeed, in *Jennings*, the Supreme Court rejected a statutory construction that would have required bond hearings under § 1225(b)(2), while expressly declining to reach the constitutional due process arguments. 138 S. Ct. at 851. In other words, *Jennings* recognized that the statutory and constitutional questions are different, and an answer to one is not an answer to the other. It found Congress did not provide for bond hearings in the statute but did not analyze whether the Constitution might compel one as a matter of due process.

The constitutional analysis is a separate inquiry. The Fifth Amendment's Due Process Clause protects noncitizens in removal proceedings from deprivations of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where

Congress has authorized mandatory detention, this Court must still determine whether the procedures afforded satisfy the requirements of due process under the particular circumstances presented.

The question here is not whether Congress authorized Petitioner's detention under § 1225(b)(2)—it did, according to *Avila*. The question is whether Petitioner's continued detention in this case without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

**1. Constitutional Protections**

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The process due under the Fifth Amendment depends on the particular circumstances presented. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context). That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424

U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. The authorities they cite for this proposition do not go so far.

Respondents cite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). But that opinion does not foreclose Petitioner's claim. It addresses the constitutional status of applicants for admission during admissibility determinations and the legal consequences of parole for immigration law purposes. It does not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures.

Respondents also rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), arguing that because § 1225(b)(2)(A) does not make detention contingent upon dangerousness or flight risk, procedures directed toward those questions are irrelevant. *Connecticut* is not controlling. There, the Supreme Court held that due process did not require a hearing on dangerousness before convicted sex offenders were placed on a state registry. *Id.* at 7–8. Because the registration statute operated solely on the fact of prior conviction, a determination on dangerousness was irrelevant to that statutory scheme. *Id.*

Here, by contrast, Petitioner does not seek a pre-deprivation hearing on facts that Congress made irrelevant. She contends that the Due Process Clause itself requires a meaningful opportunity for an individualized determination to justify the continued deprivation of her fundamental right to be free from physical confinement. *Connecticut* does not foreclose the constitutional inquiry presented in this case.

*Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), also cited, does not compel a different conclusion. *Banyee* concerned mandatory detention under § 1226(c), arising from criminal removability, and principally rejected a claim that detention had become unconstitutional because of its duration. Petitioner's claim is different. She does not seek a temporal limitation on detention. Instead, she challenges the absence of any individualized process to test whether continued detention remains justified in her case.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was encountered at the border and released on an Order of Recognizance when she was thirteen years old. Six years later, she was arrested by ICE after she had established community ties, lived with a family of United States citizens, attended middle school and high school, and been employed in the community. Nothing in the record shows that Petitioner's release on an Order of Recognizance was revoked in accordance with the applicable regulations. *See* 8 C.F.R. § 236.1(c)(9). She does not have any criminal convictions. Although those facts do not alter Petitioner's statutory status as an applicant for admission, they bear directly on the nature of the liberty interest at stake. At stake here is Petitioner's liberty itself, which is further defined by the life she pursued while free from custody. Under these particular circumstances, continued physical confinement

constitutes a significant deprivation.

The second *Mathews* factor likewise weighs in Petitioner's favor. Respondents have not provided Petitioner any chance for an individualized determination as to whether continued detention remains justified. Her continued detention thus rests entirely on her statutory classification as an applicant for admission. While Congress has defined who is subject to mandatory detention, once that detention authority is exercised, the Due Process Clause asks whether a constitutionally sufficient procedure has been followed. The problem here is that the existing procedure provides no mechanism for determining whether continued confinement remains justified under the particular circumstances of Petitioner's case. Continued detention with *no* opportunity for individualized review carries a substantial risk of erroneous deprivation. Rather than provide process, Respondents assert that Petitioner is subject to 90-day mandatory detention under § 1231, which as explained above does not apply, or mandatory detention under § 1225(b)(2). Respondents do nothing to reduce the risk that an erroneous deprivation would go undetected under the current procedure. Without an individualized custody hearing, Petitioner's ongoing detention has not been individually tested. In that procedural posture, the risk of erroneous deprivation is at its greatest.

The government's interests are also substantial. Congress has a legitimate and important interest in ensuring that applicants for admission appear for removal proceedings and in protecting the public where appropriate. Making an individualized custody determination, however, does not undermine those interests. It does not mean that § 1225 has no force as a statutory matter. It simply means, as a constitutional matter,

that Petitioner's continued detention would then be supported by a neutral decisionmaker's individualized assessment. The modest administrative burden associated with such a determination is outweighed by the significant private liberty interest at stake and risk of erroneous deprivation.

Under the particular circumstances presented here, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that detention does not satisfy procedural due process. Accordingly, her continued detention violates the Due Process Clause of the Fifth Amendment.

**C. Remedy**

The constitutional deficiency identified here lies not in the statutory authority to detain, but in the procedures afforded regarding Petitioner's continued detention. Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional question of whether continued immigration detention satisfies due process under the circumstances of Petitioner's case. Conducting a constitutional inquiry into whether additional process is needed in this case does not invalidate § 1225(b)(2) or preclude Respondents from following its requirements when applicable. As explained above, Petitioner has not received a constitutionally adequate process. Without it, her detention is unlawful, and habeas relief is warranted.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory

framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. Ordering a bond hearing here does not mean a bond hearing is constitutionally required in every case where detention is applied under § 1225(b)(2). Rather, it is warranted after considering the facts and procedures followed in this particular case, which presents an ongoing, significant loss of liberty in the absence of any individualized determination of the basis for the continued deprivation.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based on an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Maria L.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Petitioner's continued detention, under the particular circumstances

presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3. Within **7 days** of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that continued custody is justified.

4. Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order has been conducted and the Immigration Judge has issued a custody determination.

5. If Respondents do not provide the hearing required by Paragraph 3 within 7 days of the date of this Order, Petitioner shall be immediately released from custody.

6. If Petitioner is released:

a. **Release and Return of Property.** In the event that Respondents release Petitioner, she must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation

availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **October 9, 2026**, Respondents shall file a notice advising whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

8. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 29, 2026
Time: 11:36 a.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge